UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE JOY MACKELVEY, | Case No. 2:16-cv-08044-KES |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Suzanne Joy MacKelvey ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Supplemental Security Income ("SSI") disability benefits. For the reasons discussed below, the ALJ's decision is AFFIRMED.

**I.**

**BACKGROUND**

Plaintiff filed her relevant benefits application on July 9, 2013, alleging the onset of disability in 1996. Administrative Record ("AR") 191. An ALJ conducted a hearing on December 4, 2014, at which Plaintiff, who was represented

by an attorney, appeared and testified. AR 57-95. The ALJ published an unfavorable decision on January 9, 2015. AR 38-56.

The ALJ found that Plaintiff does not suffer from any medically determinable severe physical impairment. AR 45. The ALJ, however, found that Plaintiff suffers from the severe mental impairments of polysubstance dependence, bipolar disorder, and anxiety disorder. AR 44. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at any exertional level with several limitations attributable to her mental impairments: "she is unable to understand, remember, and carry out detailed or complex tasks and she can perform work functions with no more than occasional contact with co-workers, supervisors and the general public." AR 47. In the social security context, "occasional" means up to one-third of the time. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5.

While Plaintiff had no past relevant work, based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could work as (1) a hand packager (Dictionary of Occupational Titles ["DOT"] 920.587.018); (2) a small products assembler (DOT 706.684-022); or (3) a caretaker (DOT 301.687-010). AR 52. Based on these findings, the ALJ concluded that Plaintiff is not disabled. Id.

The ALJ noted that disability benefits may not be granted to claimants whose "drug addiction or alcoholism is material to the determination of disability." AR 43. If the ALJ had found Plaintiff disabled, then the ALJ would have been obligated to conduct a differentiating analysis to determine if Plaintiff would still be disabled without considering the functional limitations caused by her polysubstance dependence. AR 44, n.2. In such an analysis, the claimant bears the burden of proof to show that his/her drug use is not the cause of the functional limitations material to the finding of disability. Id. The ALJ did not conduct a differentiating analysis in this case, having concluded that Plaintiff is not disabled

even when considering all her functional limitations, whatever their source.

**II.**

**ISSUES PRESENTED**

<u>Issue One</u>: Whether the ALJ erred in evaluating the opinions of treating psychiatrist, Dr. Thomas Hoffman, M.D. Dkt. 23, Joint Stipulation ("JS") at 4.

Plaintiff contends that the ALJ failed to give any reason – let along a specific and legitimate reason – for rejecting Dr. Hoffman's two-page "Medical Source Statement – Mental." JS at 4, citing AR 276-77. The Commissioner contends that the ALJ did not "reject" Dr. Hoffman's opinions, but instead determined Plaintiff's RFC consistent with them. JS at 7-8.

<u>Issue Two</u>: Whether the ALJ's RFC determination is supported by substantial evidence. JS at 4.

Plaintiff contends that the Appeals Counsel should have accepted as evidence a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" completed by Plaintiff's treating psychologist, Esther Lee, Ph.D., and dated January 28, 2016, i.e., about a year after the ALJ's January 9, 2015 decision. JS at 11. Per Plaintiff, had those materials been accepted as evidence, then substantial evidence would not support the ALJ's RFC determination. JS at 11-17.

The Commissioner argues that the Appeals Counsel correctly declined to accept Dr. Lee's 2016 materials as evidence because those materials "post-dated the ALJ's decision." JS at 17.

**III.**

**DISCUSSION.**

**A.** **Issue One: The ALJ's Evaluation of Dr. Hoffman's Opinions.**

**1.** **The Treating Physician Rule.**

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1222 (9th Cir. 2010) (citation omitted). This

rule, however, is not absolute. Where the treating physician's opinion is not contradicted by an examining physician, that opinion may be rejected only for "clear and convincing reasons." Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999). Where, however, the opinions of the treating and examining physicians conflict, if the ALJ wishes to disregard the opinion of the treating physician, the ALJ must give "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted). See also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." (citation omitted)).

Thus, under Andrews and Orn, the dispositive questions are (1) whether the ALJ's RFC determination rejected any of Dr. Hoffman's opinions and adopted contradictory opinions by other medical sources, and if so, (2) did the ALJ give "specific, legitimate reasons" for doing so.

**2. Summary of Dr. Hoffman's Opinions.**

Dr. Hoffman works for the Los Angeles County Department of Mental Health. AR 297, 331. On June 14, 2012, Dr. Hoffman complete a two-page "Medical Source Statement – Mental" form. AR 276-77. The form requires checking boxes to rate the patient's ability to do certain work-related activities "on a day-to-day basis in a regular (40 hour) work setting." AR 276. The four available ratings are unlimited, good, fair, or poor. Id. Dr. Hoffman only used the "fair" or "poor" ratings. Fair was defined as "the individuals' capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described." AR 276. Poor was defined as "the individual cannot usefully perform or sustain the activity." Id.

Dr. Hoffman opined Plaintiff has a "fair" ability to understand and remember "very short and simple instructions" and react appropriately to

4

workplace hazards. AR 276-77. He opined she had a "poor" ability to (1) understand and remember "detailed or complex instructions," (2) carry out instructions (without specifying detailed or complex), (3) concentrate, (4) work without supervision, (5) interact with the public, coworkers and supervisors, and (6) adapt to workplace changes. Id.

The same "medical findings" supported all Dr. Hoffman's opinions about Plaintiff's functionality. AR 276-77. Those findings were "self-reported history and observations clinically during appointments." AR 276. Dr. Hoffman diagnosed Plaintiff with a mood disorder, borderline personality disorder, posttraumatic stress disorder, and polysubstance dependence. Id. He opined that consistent with these diagnoses, "patient has difficulty with mood stability, anxiety, irritability, concentration, and interpersonal functioning." Id. Dr. Hoffman does not indicate which limitations or degrees of limitation he attributed to Plaintiff's polysubstance dependence. Id.

### 3. The RFC Compared to Dr. Hoffman's Medical Source Statement.

#### a. Understanding, Remembering, and Carrying Out Instructions.

The ALJ gave "significant weight" to the opinions of Dr. Erhart. AR 50. Dr. Erhart opined that Plaintiff's "ability to understand, remember and perform instructions for simple tasks was intact." AR 283. He opined, however, that her "ability to understand, remember and perform instructions for complex tasks was severely impaired based on clustered deficits on a cognitive exam indicating prioritized problems with strategizing, maintaining attention and vigilance, and producing recurring instances where she asked even moderately complex questions to be reiterated." Id. He expressly found that the limitations in his report reflected Plaintiff's "neurological problems" rather than "cocaine exposure." AR 284.

In his RFC determination, the ALJ adopted Dr. Erhart's opinions concerning Plaintiff's reasoning abilities by finding that Plaintiff cannot "understand, remember, and carry out detailed or complex tasks." AR 47. The ALJ also found

5

that Plaintiff could work as a hand packager, small products assembler, or caretaker, all jobs that require level 2 reasoning per their DOT description.[1] Jobs requiring level 2 reasoning are simple, repetitive jobs. Salazar v. Astrue, No. 07-00565, 2008 WL 4370056, at *7 (collecting cases).

These findings do not contradict Dr. Hoffman's opinion that Plaintiff cannot usefully understand and remember "detailed or complex instructions." AR 276. These findings also do not contradict Dr. Hoffman's opinion that Plaintiff has a "fair" ability to understand and remember simple instructions, because "fair" was not defined to preclude the activity. Rather, Dr. Hoffman's "fair" rating only indicated that Plaintiff's ability to understand and remember simple instructions in a regular work setting was "impaired" to an unknown degree/extent. AR 276. That some unspecified (and perhaps slight) degree of impairment exists in a regular work setting is not equal to an opinion that Plaintiff would be unable to understand and remember simple instructions in a workplace environment protected from other sources of stress, such as frequent interactions other people.

The Medical Source Statement form that Dr. Hoffman used differentiated between "complex" and "simple" instructions when asking about understanding and remembering, but it did not differentiate between "complex" and "simple" instructions when asking about carrying out. AR 276. Dr. Hoffman therefore presumably intended for his opinion about carrying out to encompass both "complex" and "simple" instructions, which is why he rated Plaintiff's ability as "poor." Id. Dr. Hoffman did not provide an opinion that addressed only Plaintiff's

---

[1] A job's level of simplicity is addressed by its DOT general educational development ("GED") reasoning development rating. GED reasoning levels range from 1 (simplest) to 6 (most complex). GED level 2 requires the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "deal with problems involving a few concrete variables in or from standardized situations." See DOT, App. C.

ability to carry out simple instructions. Thus, Dr. Hoffman did not provide an opinion that conflicts with Dr. Erhart's opinion that Plaintiff retains the ability to "perform … simple tasks." AR 283.

b. Interacting with Other People.

Dr. Erhart opined that Plaintiff's "ability to interact with the public, coworkers and supervisor was moderately impaired by cross sectional features of an impatient and impulsive response style as well as difficulties maintaining focus both of which will be frustrating to potential employers." AR 283. The ALJ relied on this opinion to include in Plaintiff's RFC a limitation that she can interact with others at work no more than one third of the time. AR 47.

Dr. Hoffman opined that Plaintiff cannot usefully "perform or sustain" interactions with others in a regular work setting. AR 276-77. It would not be reasonable to interpret Dr. Hoffman as opining that Plaintiff cannot "perform" any work-related, interpersonal interactions, because his own treatment notes reflect his awareness that she can and does interact with others on a limited basis, such as her boyfriend, her mother, and medical service providers. AR 332-34. Dr. Hoffman must therefore have meant that, in his opinion, Plaintiff cannot "sustain" interpersonal reactions in a regular work setting. The Medical Source Statement form that Dr. Hoffman used, however, does not define or quantify the term "sustain." Dr. Hoffman might agree that a person who can only interact with others at work up to one-third of the time has no useful ability to "sustain" that activity.

**4. Analysis.**

The ALJ neither discussed Dr. Hoffman by name and nor discussed the opinions in AR 276-77. The ALJ did discuss Plaintiff's treating records from "Downtown Mental Health," i.e., the Los Angeles County Department of Mental Health. AR 45, citing Ex. B7F/3-5 (AR 332-34 [medication support service treating notes by Dr. Hoffman]). The ALJ also considered the opinions of Dr.

7

Erhart, state agency psychologist Cheryl Woodson-Johnson, Psy.D., and state agency psychiatrist R. Singh, M.D. AR 50. The state agency doctors reviewed Dr. Hoffman's findings in the context of the medical record and opined that Plaintiff would be able to perform simple, routine, and repetitive tasks with limited interpersonal contact. AR 114-15, 118-25.

An ALJ need not discuss "*all* evidence" presented by a claimant. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, the ALJ need only explain why he "rejected" significant, probative evidence. Id. Ultimately, the RFC adopted by the ALJ did not "reject" the opinions of Dr. Hoffman in favor of those of Drs. Erhart, Woodson-Johnson, or Singh. Rather, Dr. Hoffman's opinions in the Medical Source Statement form are not well quantified, and they can reasonably be interpreted as consistent with the other doctors and the RFC determined by the ALJ, as discussed above. For these reasons, Plaintiff has failed to show that the ALJ erred by failing to give reasons for "rejecting" Dr. Hoffman's opinions.

Even if there was error, it was harmless. "A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

Here, Dr. Hoffman expressly states that his Medical Source Statement opinions about Plaintiff's limitations are supported by and consistent with all her diagnoses, including polysubstance dependence. AR 276. He did not distinguish which limitations (or degrees of limitations) were attributable to polysubstance dependence versus Plaintiff's other impairments. AR 276-77. Dr. Hoffman's failure to draw this distinction destroys the probative value of his opinions and makes any error to consider them harmless, because the ALJ cannot base a finding

8

of disability on functional limitations caused by polysubstance dependence.

**B.     Issue Two:  Dr. Lee's 2016 Opinion.**

      **1.     Rules Governing New Evidence.**

A claimant may ask the Appeals Council to review an adverse decision by an ALJ.  The Appeals Council will review the ALJ's decision if it receives evidence "that is new, material, and *relates to the period on or before the date of the hearing decision*, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (emphasis added).  Per the regulations, if a claimant submits "additional evidence that does not relate to the period *on or before the date of the administrative law judge hearing decision* …, the Appeals Council will send" the claimant a notice that explains why it did not accept the additional evidence.  20 C.F.R. § 404.970(c) (emphasis added).

If the Appeals counsel accepts new evidence and makes it part of the record, then the district court must consider the new evidence in analyzing whether the ALJ's findings are supported by substantial evidence.  Brewes v. Comm'r of SSA, 682 F.3d 1157, 1163 (2012).

If, however, the Appeals Council declines to accept one or more pieces of new evidence (such as Dr. Lee's opinion [see AR 2]), then the claimant may ask the district court to remand the case to permit the ALJ to consider the new evidence.  Remand is appropriate if (1) the new evidence is "material" and (2) there is "good cause" for the failure to incorporate such evidence in the record in a prior proceeding.  Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984) (citing 42 U.S.C. § 405(g)).

"To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier."  Mayes v. Massanari, 276 F.3d 453, 463 (9th Cir. 2001); see also Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new information surfaces after the Secretary's final decision and the claimant could not

have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied.").

To be material, the new evidence must bear "directly and substantially on the matter in dispute." Mayes, 276 F.3d at 462 (holding no remand required where claimant failed to demonstrate that "the [back] condition diagnosed in November 1997 [and discussed in the new evidence] even existed when the ALJ hearing was held in May 1997"). This means it must be probative of the claimant's condition at or before the time of the disability hearing. Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511 (9th Cir. 1988) (citing 20 C.F.R. § 404.970(b)) (holding evidence of "mental deterioration after the hearing … would be material to a new application, but not probative of his condition at the hearing"). Finally, materiality also requires plaintiffs to "demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." Mayes, 276 F.3d at 463.

### 2. **Factual Background of Plaintiff's New Evidence.**

On January 28, 2016, Esther Lee, Ph.D., Plaintiff's treating psychologist, completed a medical source statement of ability to do work-related activities (Mental) and an evaluation form for mental disorders in support of Plaintiff's claim. Dkt. 24-1. Plaintiff submitted these documents to the Appeals Council on April 3, 2016, and wrote a supplement brief describing Dr. Lee's opinions. AR 271-273. The Appeals Council declined to include Dr. Lee's 2016 medical source statement in the administrative record, finding that it was not probative of whether Plaintiff was disabled on or before January 9, 2015. AR 2.

### 3. **The ALJ Need Not Consider Dr. Lee's 2016 Opinion.**

a. Good Cause.

Per Plaintiff's letter brief, Dr. Lee began treating her in July 2015. AR 271. This is after the ALJ's decision in January 2015. AR 52. Plaintiff has therefore demonstrated "good cause" for not obtaining a treating opinion from Dr. Lee

earlier.

         b.     Materiality

Plaintiff argues that Dr. Lee's January 28, 2016 opinion should be viewed as probative of her condition at or before January 9, 2015, because (1) "Dr. Lee examined her approximately 8-months from the ALJ's decision," and (2) Dr. Lee also worked for the Los Angeles County Department of Mental Health, such that Dr. Lee may have had an opportunity to "observe" Plaintiff earlier and may have had access to her previous chart notes. JS at 19.

Regarding the timing, while Dr. Lee's treating relationship with Plaintiff began eight months after the ALJ's decision, Dr. Lee's opinion is dated more than a year after the ALJ's opinion. Compare Dkt. 24-1 at 7 with AR 52. This is a significant lapse of time, during which the limitations caused by Plaintiff's impairments may have changed significantly. Medical opinions that describes a deterioration in the claimant's condition after the ALJ's decision are not probative of the claimant's condition during the relevant time period. Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988) (contrasting relevant, retrospective medical opinions with irrelevant medical opinions describing "any deterioration in [the claimant's] condition subsequent to" the relevant cutoff date); Hall v. Secretary of Health, Educ. & Welfare, 602 F.2d 1372, 1377 (9th Cir. 1979) (new evidence "was of extremely doubtful relevance because it was based on an examination eight months after [claimant's] insured status"); Chavolla v. Colvin, No. 13-3943, 2014 U.S. Dist. LEXIS 32132, at *5-6 (C.D. Cal. Mar. 11, 2014) ("Dr. Lane's opinions from July and September 2009 were not probative evidence of plaintiff's limitations during the earlier, relevant period of June 27, 2007, to May 20, 2009….").

Dr. Lee did not indicate that her opinions were intended to describe Plaintiff's condition a year earlier. To the contrary, Dr. Lee described Plaintiff's "present illness" and "current level of functioning." Dkt. 24-1 at 4, 6. While she

11

also noted some of Plaintiff's medical history, she did not offer opinions about Plaintiff's past level of functioning. Dkt. 24-1 at 6 (opinion Plaintiff "is currently not able" to perform certain activities).

Regarding Plaintiff's argument that Dr. Lee might have obtained information about Plaintiff from the relevant time, Plaintiff's argument relies on speculation. There is no evidence that Dr. Lee based her opinions on any information other than her own observations, as the form instructed her to do. Dkt. 24-1 at 1. While she noted Plaintiff's prior treatment at the Downtown Mental Health Center under "past history," she did not cite from past treating records. Id. at 4.

In sum, nothing in Dr. Lee's opinions suggests that she provided a retrospective opinion, because she did not have a treating relationship with Plaintiff until eight months after the ALJ's decision. Plaintiff has failed to demonstrate that Dr. Lee's opinion is probative of Plaintiff's condition before January 9, 2015.

**4. Plaintiff's Letter Brief is Not Substantial Evidence.**

Plaintiff argues that since the Appeals Council accepted her letter brief, and that brief summarized Dr. Lee's 2016 opinions, those opinions became part of the record, such that this Court must consider them when evaluating whether the ALJ's RFC determination is supported by substantial evidence. JS at 19.

Not so. The social security regulations broadly define "evidence" as "anything you or anyone else submits to us or that we obtain that relates to your claim." 20 C.F.R. § 416.912(b). The regulations list several categories of medical evidence, but they do not refer to summaries of medical records in briefing as "evidence." 20 C.F.R. § 416.912(b)(1)-(8).

In Edwards v. Massanari, No. 00-0548, 2001 U.S. Dist. LEXIS 8750 (S.D. Ala. June 5, 2001), the administrative record included a letter brief from plaintiff's counsel describing IQ testing performed by a qualified medical source. Id. at *2.

Plaintiff contended that the ALJ "improperly rejected" this evidence. Id. The court determined that a letter brief reciting "a treating source's findings does not constitute evidence," such that the ALJ had no duty to discuss it. Id.

The Court agrees with this reasoning. Given the Appeals Council's clear rejection of Dr. Lee's 2016 Medical Source Statement (AR 2), the Appeals Council did not accept Dr. Lee's opinions as evidence by accepting Plaintiff's letter brief discussing them.

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED.

Dated: October 11, 2017

_____
KAREN E. SCOTT
United States Magistrate Judge